Sims v. Boynton.

| 32 | 353 |
| 95 | 258 |

## SIMS vs. BOYNTON.

[DETINUE FOR SLAVES.]

1. *Amendment of judgment nunc pro tunc.*—An entry on the trial docket, in the handwriting of the presiding judge, in these words : " Plaintiff takes a nonsuit, which is set aside on payment of the costs," is sufficient to authorize an amendment of the judgment, *nunc pro tunc*, at a subsequent term, so as to show that the nonsuit was set aside on the payment of costs.

2. *How administrator may declare.*—An administrator, suing individually, may recover on proof of his intestate's title, and of his own prior possession in his official capacity.

3. *Construction of order granting letters of administration question for court.*—It is the duty of the court to construe an order granting letters of administration, and to instruct the jury whether it is valid or invalid.

4. *Error without injury in charge too favorable to appellant.*—A charge to the jury, making the validity of the plaintiff's letters of administration depend on the sufficiency of parol evidence, when they are valid on their face, is not an error of which the defendant can complain.

5. *Letters of administration presumptive evidence of intestate's death.*—Letters of administration are *prima-facie* evidence of the intestate's death, and that he died intestate.

6. *Error without injury in admission of redundant evidence.*—The admission of evidence which is simply superfluous or redundant, the plaintiff's case being conclusively established without it, is not an error of which the defendant can complain.

7. *Outstanding title in third person.*—Where the plaintiff's right of action is founded on his prior possession, the defendant cannot set up an outstanding title in a third person, without connecting himself with it.

8. *When bailor of hired slave may maintain detinue.*—If the bailee of a hired slave is deprived of his possession during the term by a third person, and thereupon notifies his bailor that he declines to sue for his recovery, and requests the latter to sue, the bailor may maintain detinue for the slave against such third person, without waiting for the termination of the bailment.

APPEAL from the Circuit Court of Barbour.

Tried before the Hon. JOHN GILL SHORTER.

THIS action was brought by Henry B. Boynton, against John M. Sims. In the summons the plaintiff was described as "Henry B. Boynton, administrator *de bonis non* of the estate of James A. McEwen, deceased;" while the complaint was in these words:

"Henry B. Boynton, adm'r,   The plaintiff claims of
      *vs.*        the defendant, the follow-
  John M. Sims.      ing slaves, to-wit : a ne-
gro woman, named Maria, and her child Louisa, of the value of $1,000; together with the value of the use or hire thereof during the detention, to-wit, from the 13th October, 1853."

The defendant pleaded "*non detinet,* and *ne unques* administrator;" and the cause was tried on issues joined on these pleas, at the spring term, 1857.

Before entering on the trial, the plaintiff moved the court to amend *nunc pro tunc*, as of the last preceding term, a judgment of nonsuit which he had taken at that term, and which the clerk had entered up in these words: "Comes the plaintiff, and takes a nonsuit. It is therefore considered by the court, that the plaintiff be nonsuited, and that the defendant go hence, and recover of the plaintiff the costs in this behalf expended." In support of his motion, the plaintiff proved an entry on the trial docket of the last preceding term, in the handwriting of the presiding judge, in these words: "Pltff. takes nonsuit, which is set aside on payment of the costs;" and his payment of the costs, under execution, after the final adjournment of the court. The court granted the motion to amend, and reinstated the cause upon the trial docket; to which the defendant excepted.

The evidence adduced on the trial showed, that the slaves in controversy were sold, on the 18th October, 1852, under a mortgage executed by John M. Sims to James Bell, and assigned by said Bell to A. Saltmarsh, and were purchased at the sale by William M. Lapsley, who, on the 16th November, 1852, sold them to James A. McEwen, a son-in-law of said Sims, and transferred his bill of sale to McEwen; that McEwen declared, both before and after his purchase, that he was buying and had bought the slaves for his mother, Mrs. Sims; that the slaves, after McEwen's purchase, were sent to a tavern at which Sims and McEwen, with their families, were living, and which was kept by one or the other of them as proprietor, but the evidence was conflicting as to which one of them was the proprietor; that letters of administration on McEwen's estate were granted by the probate court of Dallas county, on the 12th November, 1853, to William M. Lapsley, who resigned the office in July, 1855; that letters of administration *de bonis non* were thereupon granted by said court on the 21st July, 1855, to the plaintiff; that the plaintiff, as administrator of McEwen, had possession of the slaves in the summer of 1855, before this suit was brought, and hired them to Dr. Howell for the balance of the year; that the defendant took them

out of the possession of said Howell, before the expiration
of the year, without the consent of either the plaintiff or
said Howell, and carried them off, claiming them as the
property of his wife; and that he retained the possession
of them until after the commencement of this suit.   The
plaintiff was allowed to prove by Dr. Howell, against the
defendant's objection," that when the slaves were taken
out of his possession, he went to plaintiff, and told him
that he would not sue for them himself, and requested
plaintiff to sue for them, and told him that, if he did not
place them back again in his possession, he would not pay
the hire which he had agreed to pay; " and to the admis-
sion of this evidence the defendant excepted.

The orders of the court appointing Lapsley and Boyn-
ton, successively, administrators of McEwen's estate, did
not show that McEwen died in Dallas county, or that he
had property in that county; but the plaintiff's letters
contained the following recital: "Whereas, James A.
McEwen, late of Dallas county, deceased, died intestate,
having while he lived, and at the time of his death, divers
goods, chattels and credits, within the county aforesaid;
by reason whereof, the full disposition and power of grant-
ing the administration of all and singular the goods and
chattels, rights and credits, of the said deceased, and also
a final dismission from the same, to the court aforesaid
does of right belong," &c.   The defendant moved to
exclude the plaintiff's letters of administration from the
jury, but assigned no ground of objection to them; and
reserved an exception to the overruling of his motion.
" The plaintiff then proposed to prove, by parol, that said
McEwen lived in Dallas county at the time of his death,
died in said county, and left assets therein."   The court
admitted this evidence, against the defendant's objection,
" for the purpose of showing that the probate court of said
county had jurisdiction to grant said orders; " and the
defendant excepted to its admission.   The plaintiff also
offered in evidence the return of the appraisers of said
McEwen's estate, made before his appointment as admin-
istrator, showing that the slaves in controversy were ap-
praised as a part of said McEwen's estate; which evidence

was admitted by the court against the defendant's objection, and he excepted.

The court charged the jury, among other things,—

" 1. That the orders appointing Lapsley administrator, and the plaintiff administrator *de bonis non*, were void on their face, for want of jurisdiction, and that it was necessary for the plaintiff, before he could recover, to show that he was administrator of McEwen; but, if they believed from the evidence that McEwen was a citizen of Dallas county at the time of his death, and died in said county, then the orders of the said court, granting letters of administration as above shown, were valid, and would sustain the plaintiff's right to the administration.

" 2. That if they believed from the evidence, that the defendant, during the period for which the plaintiff had hired the slaves to Dr. Howell, took the possession of said slaves from Dr. Howell, without the knowledge or consent of either plaintiff or said Howell, and asserted title to them in his wife ; and that Howell then went to plaintiff, and told him that he would not sue for the slaves, and requested plaintiff to sue for them, and said that he would not pay hire for them if they were not placed back in his possession,—then the contract of hiring would not defeat the plaintiff's right to recover."

The defendant excepted to each of these charges, and then requested twenty-one written charges, most of which the court refused to give. Of these charges the 18th was as follows: " That if the jury believed all the evidence, they must find for the defendant on the plea of *ne unques* administrator ; " which charge the court refused to give. The other charges asked require no particular notice.

The errors now assigned embrace all the rulings of the court to which exceptions were reserved, together with the rendition of final judgment for the plaintiff.

D. W. BAINE, and GEO. W. GAYLE, for the appellant :

1. The court erred in entering judgment of non-suit *nunc pro tunc*, and reinstating the cause on the docket. 9 Ala. 399 ; 11 Ala. 270 ; 8 Porter, 263.

2. The probate court, under the provisions of the Code,

is a court of limited jurisdiction, as to the grant of administration. The records of such courts must show, on their face, the facts which confer the jurisdiction.—Lister v. Vivian, 8 Porter, 377; Taliaferro v. Bassett, 3 Ala. 674; McCartney v. Calhoun, 11 Ala. 118; Bishop's Heirs v. Hampton, 15 Ala. 767; S. C., 19 Ala. 792; Commissioners' Court v. Thompson, 15 Ala. 139; S. C., 18 Ala. 696; Lamar v. Commissioners' Court, 21 Ala. 772; Hamner v. Mason, 24 Ala. 485; Slaughter v. Cunningham, 24 Ala. 269; Gunn v. Howell, 27 Ala. 676; Commissioners' Court v. Tarver, 25 Ala. 480. These jurisdictional facts cannot be shown by parol.—Springs v. Irwin, 6 Iredell, 28; Dunn v. The State, 2 Ark. 230; 1 Williams on Executors, 153. Nor is the recital of jurisdictional facts in the letters of administration, when they are not contained in the order or decree, sufficient to uphold the jurisdiction.—Nelson v. Griffin, 2 Yerger, 628; Ford v. Walsworth, 15 Wend. 449; Saltonstall v. Riley, 28 Ala. 164.

3. The plaintiff was not entitled to recover on the proof, because it was shown that he had parted with the possession under a contract of hiring, which was unexpired when the action was commenced. The right of action, during the bailment, was in Dr. Howell.—Abercrombie v. Bradford, 16 Ala. 567; Reese v. Harris, 27 Ala. 305; 2 Greenl. Ev. § 640; 1 Chitty on Pleading, 152, 122; Fenner v. Kirkman, 26 Ala. 650.

4. Proof of title in McEwen's estate would not authorize a recovery under the complaint, which was in the plaintiff's individual name.—Williams v. Agee, 27 Ala. 644; Crimm's Adm'rs v. Crawford, 29 Ala. 623.

5. The verdict does not conform to the issues joined. Wittick v. Traun, 27 Ala. 571; 2 Comyn's Dig. 245–48; Brown v. Henderson, 4 Munford, 492; 4 Johns. 213.

BYRD & MORGAN, *contra.*—1. The entry on the trial docket, in the handwriting of the presiding judge, was sufficient to authorize the amendment of the judgment *nunc pro tunc.*—Moody v. Keener, 9 Porter, 252; Wilkinson v. Goldthwaite, 1 Stew. 159; Williams v. The State,

29 Ala. 9; Hood v. Br. B'k, 9 Ala. 325; Moore v. Horn & Bouldin, 5 Ala. 324.

2. The plaintiff's letters of administration were valid on their face, without the aid of extrinsic evidence; nor was there any evidence impeaching their validity. Under the Code, (§ 1693,) letters of administration are conclusive evidence of the authority of the administrator, until revoked. If the record was defective, parol evidence was admissible in aid of it.—Doe *d.* Saltonstall v. Riley & Dawson, 28 Ala. 164; Duncan & Hooper v. Stewart, 25 Ala. 408; Glazener v. Foster, 27 Ala. 391; Williams v. The State, 29 Ala. 9.

3. The plaintiff did not sue as administrator, and was entitled to recover on proof of his prior possession only. Walker v. Landerdale, 17 Ala. 350; Burney v. Lambert, 1 Wash. 308; Agee v. Williams, 27 Ala. 644.

4. The defendant could not set up an outstanding title in a third person, with which he had no connection.—Miller v. Jones, 29 Ala. 181; Shomo v. Caldwell, 21 Ala. 448; Miller v. Eatman, 11 Ala. 609; Dozier v. Joyce, 8 Porter, 303; McGuire v. Shelby, 20 Ala. 456; Deslazo v. Lewis, 5 S. & P. 91; 3 Bibb, 93.

5. The bailment to Howell was no obstacle to a recovery by plaintiff. As to third persons, Howell's possession was that of Boynton.—Pitts v. Curtis, 4 Ala. 350; Magee v. Toland, 8 Porter, 36; 3 Bacon's Abr. 134. Moreover, the evidence showed that Howell, in effect, had either abandoned the contract, or had surrendered his interest to the plaintiff.

6. The verdict was sufficient to support the judgment. Agee v. Medlock, 25 Ala. 381; Cullum v. Branch Bank, 4 Ala. 26.

RICE, C. J.—The proof made at the spring term, 1857, authorized the amendment of the judgment entry made at the fall term, 1856, in relation to the taking and setting aside the non-suit. There was no error in allowing that amendment, and in placing the case on the docket for trial.—Reese v. Billing, 9 Ala. R. 263; Edwards v.

Lewis, 18 *ib.* 494; Chighizola v. Doe *ex dem.* Eslava, 24 *ib.* 237.

[2.] From the complaint it does not appear that the plaintiff, Boynton, sues here as the administrator of Jas. A. McEwen, deceased. But it is settled, that an administrator, who as such has had possession of personal chattels of his intestate, is not obliged to sue in his representative capacity for their recovery; and that he may sue for and recover them in his individual capacity.—George v. English, at the last term.

Although the complaint does not, on its face, show that Boynton claims a recovery here as administrator of McEwen; yet, as he might recover under it upon his title and possession as such administrator, he had the right to prove that it was in his representative capacity that he here claimed a recovery. The return of the appraisers, as offered in evidence by him, tended to show that he claimed a recovery in that capacity, and was admissible for that purpose.—Calvert v. Morrow, 18 Ala. 67.

No plea of *ne unques* administrator appears in the record. But, if such plea did appear, the evidence shows it to be untrue; and that Wm. M. Lapsley was the administrator in chief, and the plaintiff, Boynton, the administrator *de bonis non* of McEwen. The defendant could not be entitled to a verdict on a plea which was thus disproved; and there was, therefore, no error in refusing the 18th charge asked by the defendant.

[3–4.] The construction of the order appointing Boynton administrator of the estate of McEwen, was a matter for the determination of the court.—Wyatt v. Steele, 26 Ala. R. 639. There was no evidence tending to show a want of jurisdiction in the probate court of Dallas county to make that order. It was, therefore, the duty of the circuit judge, who presided at the trial of this cause, to have told the jury, that the order was valid, and made by a court having jurisdiction to make it. In not telling them so, the circuit court erred. But the error was in favor of the defendant, who here complains of it. By committing that error, and making the validity of the order dependent on parol proof, the circuit court gave to

the defendant an additional chance for a verdict, to which he was not legally entitled. He certainly is not entitled to a reversal for an error which clearly did not injure him, but actually gave him one more chance for success than the law allowed.—Eslava v. Elliott, 5 Ala. R. 264; Miller v. Jones, 26 Ala. 247; Alford v. Samuels, 8 Ala. 95; Code, §§ 670, 672, 673, 675.

[5.] As it was the duty of the court to have pronounced the order valid, it was not erroneous to charge that, in the absence of evidence to the contrary, the law presumed that the decedent died intestate. A valid grant of letters of administration, by the domestic tribunal of exclusive jurisdiction, is *prima-facie* evidence of the death of the alleged intestate, and of the right of representing him. Brickhouse v. Brickhouse, 11 Iredell, 404; Peterkin v. Inloes, 4 Maryland Rep. 175.

[6.] The letters of administration may have been unnecessary, or redundant evidence. But the refusal to exclude such evidence, when, as here, the refusal could not injure the party objecting, furnishes no ground of reversal.—Elliott v. Eslava, 5 Ala. R. 264; Kyle v. Mays, 22 Ala. 692; Garrett v. Garrett, 27 Ala. 687.

[7.] When a plaintiff in detinue has shown a prior possession, and made out a *prima-facie* case, the defendant cannot defeat a recovery, by showing merely an outstanding title in another, with which he has no connection.—Dozier v. Joyce, 8 Porter, 303; Traylor v. Marshal, 11 Ala. R. 458; Lowremore v. Berry, 19 Ala. 130; McGuire v. Shelby, 20 Ala. 456; Harker v. Dement, 9 Gill, 7.

[8.] After evidence had been adduced, tending to show that the plaintiff, as administrator of McEwen, was in possession of the slaves in controversy; and that after such possession, and before this suit was commenced, he had hired them to Doctor Howell, in the summer of 1855, for the balance of that year, and had placed them in his possession; and that while they were thus in his possession; and before the commencement of this suit, the defendant took possession of them, without the consent of the plaintiff or Dr. Howell, and kept them until after this

24

suit was brought,—it was proper to allow the plaintiff to prove by Dr. Howell, that "when the slaves were taken away from him, he went to plaintiff, and told him he would not sue for them, nor pay hire, if they were not returned to him, and requested plaintiff to sue for them.". That evidence certainly tended to prove, that the defendant had no connection with the title outstanding in Dr. Howell for the unexpired term of hire, if that title should be considered as an outstanding one; and it also tended to bring the case within the influence of the following principle, to-wit, that where slaves, during a bailment, are taken and converted by a third person, and the bailee thereupon refuses to proceed for the tort, and gives notice thereof to the bailor, and requests him to sue for them; and thereupon the bailor brings detinue against the tortfeasor, the latter cannot defeat the action, by showing merely that the bailment was unexpired at the commencement of the suit.—Addison on Contracts, (edition of 1857,) 416, 417. Such conduct on the part of the bailee restores the right of possession to the bailor, and forfeits or surrenders his own accruing rights under the contract. Grant v. King, 14 Vt. Rep. 367; Farrant v. Thompson, 5 Barn. & Ald. 826; Sanborn v. Colman, 6 New Hamp. Rep. 14; Hall v. Goodson, at the present term.

If the final judgment is not in the proper form, it is fully as favorable to the defendant as it should have been. It does not deprive him of any legal right; and he has no ground for complaining of it.

What we have above said disposes of all the matters relied on for reversal, and requires us to affirm the judgment.

Judgment affirmed.